# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER JOSEPH DAVIS, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. SAG-19-3104 |
| OFFICER K. FISHER, CO II,<br>DEPARTMENT OF PUBLIC SAFETY<br>AND CORRECTIONAL SERVICES,<br>MCTC | *<br><br>* | |
| | * | |
| Defendants | | |

***

## MEMORANDUM OPINION

Self-represented plaintiff Christopher Joseph Davis alleges during the time he was incarcerated at the Maryland Correctional Training Center ("MCTC")[1], Defendants violated his constitutional rights by failing to assign him to a single cell, placing him on administrative segregation, and retaliating against him for filing an Administrative Remedy Procedure ("ARP") request. Complaint, ECF No. 1. Defendants Correctional Officer II Keshia Fisher, MCTC, and the Department of Public Safety and Correctional Services ("DPSCS"), by their counsel, filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 13), to which Davis filed an opposition titled "Motion to Repeal Dismissal and Summary Judgment." ECF No. 16. Also pending is Davis's Motion to Deny Defendants' Motion for an Extension of Time to file their Response (ECF No. 12), which will be denied as moot. After reviewing the filings, the Court finds that a hearing is not necessary to resolve the issues pending. *See* Local Rule 105.6 (D. Md.

---

[1] Davis is presently incarcerated at Western Correctional Institution in Cumberland, Maryland. ECF No. 15; http://www.dpscs.state.md.us/inmate/search (visited December 15, 2020)

2018).  For the reasons explained below, Defendants' Motion will be granted.  The claims against DPSCS and MCTC will be dismissed and summary judgment will be granted in favor of Fisher.

## Background

Davis alleges that Defendants violated his constitutional rights by failing to assign him to a single cell, placing him in segregation housing, and retaliating against him for filing an ARP against Officer Fisher.  Complaint, ECF No. 1.  He claims that on February 23, 2019, Fisher "skipped over" him for a single cell assignment, for which he was "next in line," because she prefers certain gang affiliations or for "you to be a Caucasian male who tells on people for her." *Id.* at 5.  Davis alleges that when he brought his cell assignment concern to Fisher's attention, harassment and retaliation ensued.  *Id.*  In his ARP Davis alleges he was not permitted to move to a single cell because in January 2019, his cellmate had accepted responsibility for possessing wine in their cell.  ARP MCTC-0404-19, ECF No. 1-1 at 2.

Additionally, the complaint makes the following allegations.  On March 18, 2019 and April 6, 2019, Davis was locked in his cell for the whole shift without a shower.  ECF No. 1 at 5.

On April 8, 2019, when "word got back" to Fisher that Davis was submitting an ARP about her, Fisher retaliated by searching his cell while he was working at his prison job.  Fisher allegedly told Davis's cellmate that because Davis had written her up, she was "going to keep fucking with [Davis]..." *Id.*; *see also* ARP MCTC-0404-19, ECF 1-1 at 1.  On April 9, 2019, Davis received a Notice of Inmate Rule Violation charging him with possession of contraband: homemade wine and five bottles of clear alcohol.  The charges were later dismissed for lack of evidence.  *Id.* at 5.

On April 10, 2019, Davis was ordered to pack his belongings[2] or he would be charged with an infraction.  Davis complied without confrontation.  *Id.*  Approximately two and one-half hours

---

[2]  Davis does not state why he was directed to pack his property.  It is likely that he was being moved to another cell.

later, he was charged with a rule infraction for threatening a correctional officer.  *Id.*; *see also* Administrative Segregation Investigative Report, Dated May 2, 2019, ECF No. 13-3 (noting Davis was found not guilty at his adjustment hearing for the infraction).  Davis asserts that no incident occurred and he had complied with the orders to pack.  *Id.*

On May 2, 2019, a hearing officer found Davis not guilty of the rule violation, and he was to return to the general prison population.  Davis alleges that Fisher wrote "falsified documents" so that he would be put on administrative segregation.  *Id.* at 6.  On May 8, 2019, Davis attended his segregation housing review, where he was informed by "the captain" that Fisher would "not sign off stating that she still feels threatened from an incident that not only did not occur but I was found not guilty…" which he claims constitutes "double jeopardy."[3]  *Id.*

Davis claims that these events are closely related issues and "outline Malicious [sic] conduct demonstrated by Ofc. K. Fisher, CO II which caused me great emotional and mental distress as well as being falsely imprisoned."[4]  ECF No. 1 at 6.  As relief, he seeks $35,000 in damages and for unspecified disciplinary measures to be imposed.  ECF No. 1 at 4, 6.

### Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the

---

[3]  The Fifth Amendment's double jeopardy clause prohibits prosecuting a person twice for the same crime by the same authority.  It does not apply to the facts as alleged.  *See Cousins v. Oliver*, 369 F. Supp. 553, 556 (E.D. Va. 1974) (claim that reclassification to higher security based on the same evidence used to prove violation of an institutional rule violates concepts of double jeopardy is without merit).

[4]  Davis is serving sentences for first degree burglary, first degree assault, and marijuana possession.  ECF No. 13-4 at 1.  There is no discernible, factual basis for his false imprisonment claim.

elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.' " *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty*., 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible

4

where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth*., 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Defendants filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Davis was on notice that the court could treat the Motion as one for summary judgment and rule on that basis, and indeed so indicates in his opposition. Accordingly, the court will review the claims against Defendants under the Rule 56(a) standard and consider the exhibits filed in support of the dispositive motion.

Defendants support their Motion with evidence including Officer Fisher's declaration (ECF No. 13-2), Davis's administrative segregation report for May 2, 2019 (ECF No. 13-3), Davis's case management assignment sheet (ECF No. 13-4), and other verified prison records (ECF No. 13-5).

The court informed Davis he may file declarations and exhibits with his opposition and the consequences of failing to do so. ECF No. 14. Davis has chosen not to file a declaration or other exhibits with his opposition to Defendants' Motion, instead relying solely on his unverified complaint and attached exhibits. ECF No. 1. Because Davis's complaint is unverified, its factual assertions may not be considered in opposition to Defendants' Motion. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(c)(1)(A); *see also Abdelnaby v. Durham D & M, LLC*, No. GLR-14-3905, 2017 WL 3725500, at *4 (D. Md. Aug. 29, 2017) (awarding summary judgment for the defendants, because the plaintiff could not "create a genuine dispute of

material fact 'through mere speculation,' " and "[t]hus, the Court [wa]s left with a record that [wa]s bereft of evidence supporting any of Abdelnaby's arguments") (quoting *Beale v. Hardy*, 769, F.2d 213, 214 (4th Cir. 1985)).

The court is mindful that Davis is a self-represented litigant.  A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim.  *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir.1990).  A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### Discussion

Defendants assert as an affirmative defense that MCTC and DPSCS are immune under the Eleventh Amendment from suit in federal court, and are not amenable to suit under 42 U.S.C. § 1983.  Further, they assert Defendant Fisher is entitled to summary judgment in her favor because an inmate has no constitutional right to specific prison housing and she did not unlawfully retaliate against him.

## I.  MCTC and DPSCS

Davis names MCTC and DPSCS as defendants but does not include any allegations against them.  As a preliminary matter, because neither MCTC nor DPSCS is a "person" subject to suit under 42 U.S.C. § 1983,[5] Davis's claims against them must be dismissed.  *See* 42 U.S.C. § 1983;

---

[5] The statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory  ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,  privileges  or immunities secured by the Constitution and law, shall be liable to the party injured[.]"

42 U.S.C. § 1983.

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *see generally* 5 Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 1230 (2002); *Vaughn v. DPSCS*, Civil Action No. CCB-20-813; 2020 WL 6291387  (October 27, 2020) (dismissing claims as to DPSCS because it is not a "person" within the meaning of § 1983); *Taylor v. Wexford Medical*, Civil Action No. TDC-15-2395; 2017 WL 1194177 (March 30, 2017) (dismissing claims against MCTC because it is not a "person" within the meaning of § 1983).

The Eleventh Amendment to the Constitution provides the States and its agencies immunity from suit in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State School. and Hospital v. Halderman*, 465 U.S. 89, 100 (1984). "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Id.*  While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment in federal court.  "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 99 (emphasis in original).  Absent waiver or congressional abrogation, sovereign immunity bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state." *Id.* at 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

DPSCS is a state agency.  MCTC is part of the Maryland DPSCS, which is a "principal department of the State government." Md. Code Ann., Corr. Servs. § 2-101.  Because DPSCS and MCTC are arms of the State of Maryland, the claims against them are barred by the Eleventh

Amendment and must be dismissed. *See, e.g., Lattisaw v. E. Corr. Inst.*, Civil Action No. CCB-15-2040, 2016 WL 3940186 (D. Md. July 21, 2016) (dismissing claim against Eastern Correctional Institution under principles of Eleventh Amendment immunity).

For the above reasons, the claims against DPSCS and MCTC will be dismissed.

## II.   Officer Fisher

Davis does not identify what constitutional provisions or federal laws Fisher allegedly has violated. Liberally construed, the complaint suggests that Davis may be raising his housing placement claims under the Due Process Clause of the Fourteenth Amendment and his retaliation claim under the First Amendment's right to petition for grievances.

### A.   Fisher Declaration

Davis claims Fisher skipped over him for a single cell assignment, unlawfully retaliated against him for filing an ARP complaint against her, and falsified unspecified documents to keep him in administrative segregation housing. Fisher denies these allegations in her declaration. Fisher Decl. ECF No. 18-1.

In her declaration, Fisher states "at MCTC there is no formal or informal waiting list for single cells. Instead the assignment of inmates to single cells is discretionary; inmates may receive single-cell assignments for different reasons, including their current work assignments." *Id.* Further, Fisher states that during her employment at MCTC there were inmates of many different gang affiliations, races, and religions who received single-cell housing assignments. ECF No. 18-1 at 1-2. Fisher disputes Davis's allegations and states: "I do not provide preferential treatment for housing assignments based upon gang affiliation, race, or religion." *Id.* at 2.

Davis does not specifically allege that Fisher was responsible for locking him in his cell or denying him showers on March 18, 2019 and April 6, 2019. Fisher denies that she was responsible

for Davis remaining in his cell on these dates, and notes that she was not assigned to work on March 18, 2019. *Id.*; *see also* Prison Log Records for March 18, 2019, ECF No. 13-5 at 4-5.

Fisher states that Davis's cell was searched on April 9, 2019, after she noticed the odor of alcohol coming from his cell. Davis's cellmate was present during the search, although Davis was not. Fisher states that institutional policy provides that it is not necessary for both inmates assigned to a cell to be present during a search. ECF No. 18-1 at 2. Alcohol was recovered from the cell, and Davis was issued an infraction, but "upon information and belief, his cellmate assumed responsibility for the alcohol and Davis was found not guilty of the infraction." *Id.*

Fisher states that on April 10, 2019, Davis verbally threatened her.[6] As a result of the threat, Fisher feared for her safety. *Id.* Davis was issued a ticket for the incident and placed on segregation. Fisher states that upon information and belief, Davis remained in segregation until he was transferred to another correctional facility. *Id.*

Fisher claims she has never falsified written documents, reports, or other official documentation, nor has she retaliated against inmates for filing ARPs. *Id.* She declares "at no time did I falsify any records related to Plaintiff, nor did I retaliate against him for engaging in the institutional administrative procedure." *Id.* at 2.

## B. Claims

### 1. Cell Assignment and Segregation Housing

"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Absent a showing of "atypical and significant

---

[6] Fisher provides no specific details about the verbal threat.

9

hardship on the inmate in relation to the ordinary incidents of prison life," prisoners do not have a constitutional right to due process before being denied access to programs or particular housing. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Courts have found that assignment to administrative segregation does not create an atypical and significant hardship. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (holding that administrative segregation is part of the ordinary incidents of prison life); *Sandin,* 515 U.S. at 485 (no liberty interest protecting against a thirty day assignment to segregated confinement because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence"). Thus, no constitutional guarantee was abridged when Davis was not assigned to a single cell. *See, e.g., Keeling v. Barrager*, 666 F.App'x 153, 156 (3d Cir. 2016) ("[I]t is well settled that he had no protected liberty interest that was implicated by ... the removal of his single-cell assignment[.]");

Davis does not assert that refusing to place him in a single-cell housing assignment constitutes an atypical and significant hardship. Davis points to no policy, procedure, or state law that provides that he was entitled to single-cell status.[7] Instead, he claims without any supporting facts that Defendant Fisher denied him single-cell housing assignment because she prefers "a certain gang affiliation or you to be a Caucasian male…" ECF No. 1 at 5, an allegation refuted by Fisher in her declaration.

Additionally, Davis does not allege that the conditions of his confinement were different from the conditions for other inmates in the general prison population. *See Beverati v. Smith*, 120 F.3d 500, 504 (4th. Cir. 1997) (six months in segregation did not amount to an atypical burden compared with ordinary prison life); *see also Davis v. Warden*, 08-AW-2553, 2010 WL 234970, at *2 (D. Md. Jan. 14, 2010) (rejecting due process challenge to administrative segregation at

---

[7] There is no documented medical necessity for Davis to receive a single cell placement.

Northern Branch Correctional Institution); *Knox v. Lanham*, 895 F. Supp. 750, 758-59 (D. Md. 1995) (administrative segregation at Eastern Correctional Institution).

Even when the facts are viewed in the light most favorable to Davis, there is no genuine dispute as to any material fact to trigger a protected liberty interest to implicate a due process claim. Accordingly, Fisher is entitled to judgment as a matter of law.

### C. Retaliation

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To establish a retaliation claim for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendants' conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) "incarceration does not divest prisoners of all constitutional protections" *id.* at 228. "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). The United States Court of Appeals for the Fourth Circuit has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S. Carolina Dep't of Corrections*, 855 F.3d 533, 545 (4th Cir. 2017).

Davis asserts that after he filed an ARP against Fisher for skipping over him for single cell placement, he was locked in his cell on two separate occasions so that he missed showers. He adds that his cell was searched and he was issued an infraction for alcohol possession. Lastly, he attributes another infraction he received for threatening Fisher and his subsequent placement segregation to Fisher's retaliation against him. Neither infraction resulted in a guilty finding against him. Evidence of retaliatory conduct exists where the defendant took adverse action against the plaintiff that would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting C*onstantine*, 411 F.3d at 500).

Here, Fisher has provided her declaration explaining the reasons for the search of Davis's cell and her concern for her safety after he threatened her. Davis provides no verified documentation to refute these assertions. Fisher explains in her declaration that: (1) Davis's cell was searched after she smelled alcohol and in fact wine and clear alcohol were found in the cell; (2) Davis verbally threatened her which caused her to fear for her safety and he was placed in segregation pending investigation; and (3) she has never retaliated against Davis or falsified records. Davis provides no declaration or verified exhibits to refute Fisher. The existence of legitimate reasons to support the adverse actions taken against Davis refutes his claim that those actions were retaliation.

Ultimately, Davis offers no affirmative evidence to show that a genuine dispute of material fact exists. *Anderson*, 477 U.S. at 256. He fails to set forth any facts to support a finding that Fisher violated his constitutional rights, and there is no evidence such that a reasonable jury could return a verdict for Davis. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record . . . a court should not adopt that

version.").  No constitutional claim has been established, and in the absence of a genuine issue of material fact in dispute, the Court will enter summary judgment in favor of Fisher.

A separate order follows.


December 17, 2020                        _____/s/_____
Date                                     Stephanie A. Gallagher
                                         United States District Judge